UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION

In re:

ECOVENTURE WIGGINS PASS, LTD.,     Case No. 9:08-bk-9197-ALP

AQUA AT PELICAN ISLE
YACHT CLUB MARINA, INC.,     Case No. 9:08-bk-9198-ALP

PELICAN ISLE YACHT CLUB
PARTNERS, LTD.,     Case No. 9:08-bk-9199-ALP
(Jointly Administered)

               Debtors.     Chapter 11

**ORDER ON CONFIRMATION OF DEBTORS'
REVISED JOINT PLAN OF REORGANIZATION**

**THIS CASE** came before the Court for a final evidentiary hearing to consider confirmation of the Debtors' Revised Joint Plan of Reorganization, as amended. (Docs. 439, 533).

The Plan is a liquidating plan pursuant to which the Debtor proposes to transfer substantially all of its assets to Regions Bank free and clear of all junior liens and encumbrances.

Objections to confirmation have been filed by at least nine parties (the Purchase Contract Claimants) who had entered into agreements to purchase condominium units or related property from the Debtor prior to the filing of the Bankruptcy Petition. (Docs. 497, 498, 499, 507, 508, 509, 510, 511, and 553).

**Background**

The Debtor is the developer and owner of a luxury waterfront condominium complex known as the "Aqua at Pelican Isle Yacht Club"

1

in Naples, Florida. The complex includes a residential tower, together with an adjacent marina and dock facility.

Financing for the project was initially provided by a group of lenders led by Regions Bank, which loaned approximately $100 million to the Debtor to develop and construct the condominium units and facilities. The Debtor has stipulated that the loan documents executed with Regions are valid and enforceable, and that Regions held a properly perfected first mortgage lien and security interest in all of the Debtor's assets as of June 24, 2008. (Doc. 67, p. 4).

On June 24, 2008, the Debtor filed a Petition under Chapter 11 of the Bankruptcy Code. The condominium complex was not completely constructed as of the Petition date.

On the Petition date, therefore, the Debtor also filed an Emergency Motion for Authority to Obtain Post-Petition Financing and Grant Senior Liens, Superpriority Administrative Expense Status and Adequate Protection Pursuant to 11 U.S.C. §§364(c) and (d) of the Bankruptcy Code and F.R.B.P. 4001. (Doc. 2). The purpose of the requested post-petition financing was to enable the Debtor to complete the construction of the project.

On July 25, 2008, the Court entered a Final Order on the Debtor's Emergency Motion for Authority to Obtain Post-Petition Financing (the DIP Financing Order). (Doc. 67). The DIP Financing Order provided that the Debtor was authorized to borrow up to $26.1 million from Cypress Lending Group, as the DIP Lender. The DIP Financing Order also provided that the DIP Loan would be secured by a first priority mortgage on all of the Debtor's assets, "senior in

priority to the prepetition liens in favor of Regions as the Prepetition Lender." (Doc. 67, p. 6).

In December of 2008, the Debtor completed the construction of a residential tower. A certificate of occupancy was granted for the tower on December 31, 2008.

On June 12, 2009, the Debtors filed their Revised Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code. (Doc. 439). The Plan states that it is "a liquidating plan of reorganization pursuant to which the Debtors shall satisfy claims through the transfer of property, funding from the DIP Loan, and the Unsecured Fund." (Doc. 439, p. 28).

The centerpiece of the liquidation is found at Section 5.4 of the Plan, which provides in part:

> On the Effective Date, the Reorganized Debtor shall transfer the Property securing the Class 3 Secured Claim of Regions to Regions [or its designee], free and clear of any and all junior liens, claims, and encumbrances. This transfer to Regions or its designee is made in accordance with Sections 363(b)(1), 363(m), 1123(a)(5)(B) and 1123(b)(4) of the Bankruptcy Code.

(Doc. 439, p. 18). Essentially, therefore, the Plan provides for the transfer of the Debtor's condominium complex to Regions free and clear of all junior liens and encumbrances. (Doc. 439, p. 28). In consideration of the transfer, Regions would not be entitled to receive any distribution under the Plan as an unsecured creditor. (Doc. 439, p. 18).

Additionally, the Plan provides that Regions will pay the secured claim of Cypress Lending Group, the DIP Lender, in full on the Effective Date of the Plan. (Doc. 439, pp. 17-18).

3

The Plan further provides that Regions will pay the sum of $100,000.00 to create an "Unsecured Fund" to be used for distribution to the holders of general unsecured claims on a pro rata basis. (Doc. 439, p. 19; Doc. 533, p. 3).

Finally, with respect to the secured claims of the Purchase Contract Claimants, the Plan provides that such secured claims "would be paid only in the event that both Cypress and Regions have been paid in full prior to the Confirmation Date." (Doc. 439, p. 19). With respect to the deposits paid by the Purchase Contract Claimants, the Plan provides that "the Debtors shall assign any and all rights to the Deposits to Regions, and Regions shall choose to accept assignment or reject assignment of the Debtors' rights to each remaining Deposit." (Doc. 439, p. 29). In connection with this provision, the Plan further provides that "nothing in the Plan, Confirmation Order, or otherwise is intended to or shall modify any right, defense, or claim that may be asserted to any deposit by any party objecting to confirmation. All the Plan does is assign, on the Effective Date, whatever rights the Estates have in Deposits, if any, to Regions." (Doc. 533, p. 4).

At least nine Purchase Contract Claimants filed written objections to confirmation of the Plan. Generally, the Purchase Contract Claimants object to confirmation for two primary reasons:

First, they contend that the liquidating plan proposed by the Debtors is impermissible, because it benefits only Regions and Cypress Lending as the Debtors' primary secured creditors, with only a de minimus fund available for distribution to unsecured creditors.

4

(See Doc. 497, p. 2; Doc. 498, pp. 7-8; Transcript of August 20, 2009 hearing, pp. 110-14).

Second, the Purchase Contract Claimants contend that the Plan should not be confirmed because it impermissibly strips their equitable vendees' liens from the Debtors' real property, and because it improperly permits the Debtor to assign their Deposits to Regions. (See Doc. 498, p. 10; Transcript of August 20, 2009 hearing, pp. 44-48, 86, 90).

Hearings were conducted on July 23, July 29, and August 20, 2009, to consider confirmation of the Debtors' Plan.

At the hearings, the Debtor represented that the Debtor-in-Possession account contains a sum in excess of $1,000,000.00 that may be used to pay allowed administrative expenses on the Effective Date of the Plan. (Doc. 534, Exhibit 1; Transcript of August 20, 2009 hearing, p. 120).

At the hearings, the Debtor also presented the testimony of Jeff J. Boyle, a certified appraiser who was engaged by Regions to appraise the Debtor's condominium project. According to Boyle, the value of the project as of June 9, 2009, is $65,200,000.00. (Doc. 536).

The amount currently owed to Regions Bank is approximately $86,356,328.00 (Doc. 534, Exhibit 1), and the amount currently owed to Cypress Lending exceeds the sum of $15,344,915.47 (Doc. 619).

The Court previously indicated that the Plan as submitted may not be confirmable because it contemplates the transfer of the Debtor's property without properly providing for the vendees' liens asserted

5

by the Purchase Contract Claimants. (Transcript of July 29, 2009 hearing, pp. 3-5). Since that time, the Court has considered the Debtor's Objections to the Secured Portion of the Purchase Contract Claimants' claims, and is contemporaneously entering an Order sustaining the Debtor's Objections to the extent that the claims were asserted as claims secured by an interest in real property.

**Discussion**

As set forth above, the Debtor's Plan is a liquidating plan pursuant to which the condominium complex will be transferred to Regions Bank free and clear of junior liens. The Court finds that the Plan should be confirmed.

**I. Compliance with §1129**

The requirements for confirmation of a Chapter 11 Plan are set forth in §1129 of the Bankruptcy Code. In the unique circumstances of this case, the Court finds that the Plan satisfies the requirements for confirmation.

In In re Cypresswood Land Partners, I, 2009 WL 136021 (Bankr. S.D. Tex.), the Court confirmed the debtor's plan under circumstances similar to this case. In Cypresswood, the debtor had acquired certain property located in Texas prior to the filing of the bankruptcy petition, but had been unable to develop and sell the property as quickly as projected. In re Cypresswood, 2009 WL 136021, at 2. The property declined in value after the bankruptcy petition was filed, and the total indebtedness on the property was greater than the property's value as of the date of the confirmation hearing. Id. at 9-10. In its liquidating Chapter 11 plan, the

6

Debtor proposed to transfer the property to an insider in exchange for the insider's assumption of the debtor's secured debt and certain other claims, and the insider's agreement to fund a lawsuit commenced by the debtor. Id. at 29. Objections to the plan were filed in which the objecting parties contended that the plan was not fair and equitable, among other objections. Id. at 8.

The Court confirmed the plan. In its order, the Court found that the plan was filed in good faith as required by §1129(a)(3) of the Bankruptcy Code, particularly in view of the effect that the nation's severe economic downturn has had and may continue to have on the value of the debtor's property. Id. at 21-23. The Court also found that confirmation of the plan was in the best interest of creditors, as required by §1129(a)(7) of the Bankruptcy Code, because unsecured claimants would receive as much as they would receive if the case were converted to Chapter 7. Additionally, the plan offered the prospect that such creditors would receive more than they would receive in a Chapter 7 case, because of the insider's prosecution of an adversary proceeding originally commenced by the debtor. Id. at 24-26. Finally, the Court found that the plan was fair and equitable with respect to the impaired classes of creditors, as required by §1129(b)(1) of the Bankruptcy Code, because the objecting creditors would receive the same treatment that they would receive under state law. Id. at 32-33.

Likewise, in the case at bar, the Court finds that the Debtor's Plan satisfies the requirements for confirmation set forth in §1129 of the Bankruptcy Code. Like the debtor in Cypresswood, the Debtor

in this case has been and will continue to be affected by the decline in property values and the unfavorable real estate market that has been experienced nationwide. In the Confirmation Affidavit filed by the Debtor, real estate professional Gerald McHale attested that confirmation of the Plan represents the "only realistic and viable alternative" for the Debtor. (Doc. 534, p. 16). According to McHale, denial of confirmation or dismissal or conversion of the case would impair any future efforts to recover and sell the remaining condominium units. (Doc. 534, p. 17).

Further, confirmation of the Plan will result in benefits to creditors that may not be available if the case were dismissed or converted. The Plan provides that allowed administrative expense claims will be paid in cash on the Effective Date of the Plan (Doc. 439, p. 15), and the Debtor has represented that the Debtor-in-Possession account contains a sum in excess of $1,000,000.00 that may be used to pay these claims. (Doc. 534, Exhibit 1; Transcript of August 20, 2009 hearing, p. 120).

Additionally, the Plan provides that Regions will pay the sum of $100,000.00 to create an "Unsecured Fund" to be used for distribution to the holders of general unsecured claims on a pro rata basis. (Doc. 439, p. 19). Further, the Amendment to the Plan provides that "all Causes of Action that the Debtors or their Estates may hold against any Person, including Causes of Action arising under Chapter 5 of the Bankruptcy Code" will be transferred to the Plan Agent for prosecution, and that any net proceeds recovered from these Causes of Action will be added to the Unsecured

8

Fund for distribution to creditors. (Doc. 533).

Under these circumstances, the Court finds that the Debtor's Plan satisfies the requirements for confirmation set forth in §1129 of the Bankruptcy Code and should be confirmed. Given the absence of viable alternatives in the current economic market, and the benefits provided by the Plan that would not otherwise be available to creditors, the Court finds that the Plan was proposed in good faith, is in the best interests of creditors, and is fair and equitable.

## II. The Purchase Contract Claimants

As set forth above, the Purchase Contract Claimants contend that the Plan should not be confirmed because it impermissibly strips their equitable vendees' liens from the Debtor's real property, and because it improperly permits the Debtor to assign their Deposits to Regions Bank.

Contemporaneously with this Order, the Court is entering an Order on Objections to Secured Portions of Claims. In that Order, the Court finds that the mortgage liens of Cypress Lending Group and Regions Bank are superior in right and priority to any equitable vendees' liens claimed by the Purchase Contract Claimants. Since the aggregate amount of the mortgage liens held by Cypress Lending and Regions exceed the value of the Debtor's property, the Court disallows the Purchase Contract Claimants' claims to the extent that they were asserted as claims secured by an interest in the Debtor's real property.

The Order is without prejudice, however, to the right of the Claimants to seek the recovery of the Deposits paid pursuant to

their Purchase and Sale Agreements, and is without prejudice to any claim or right that the Claimants may have to such Deposits. This determination is consistent with the Debtor's Plan, which provides that nothing therein "is intended to or shall modify any right, defense, or claim that may be asserted to any deposit by any party objecting to confirmation." (Doc. 533, p. 4).

Because the Court has disallowed the Claimant's claims to the extent that they assert an interest in real property, and because the Claimant's rights to the Deposits are preserved in the Plan, the Court finds that the objections to confirmation filed by the Purchase Contract Claimants should be overruled.

Accordingly:

**IT IS ORDERED** that:

1. The Debtors' Revised Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code, as amended, is confirmed.

2. The Objections to Confirmation filed by Clark Aviation Corporation, Carl Redfield Trust 2000 Dated 10/18/2000, Carl Redfield, Trustee, Don Niederpruem, Jerome Hayes, Howard Molen, Carlyle Investments, Inc., Steven Siegfried, Jake Shirley and R.J. Shirley, and Southeast Financial Services, LLC, are overruled.

**DATED** this **17** day of **SEP**, 2009.

**BY THE COURT**

*[signature]*

ALEXANDER L. PASKAY
United States Bankruptcy Judge